# SUPERIOR COURT

Gustave Friedrich et als.⎫
            vs.            ⎬Eq.No.7265
City of Woonsocket et al.⎭

RESCRIPT

June 5, 1925

TANNER, P. J. This is a bill in equity heard upon a motion for a preliminary injunction.

The bill is brought by taxpayers of the City of Woonsocket to restrain the execution of a contract for rock made with the Iron Trap Rock Company.

The bill alleges that said contract was void, first, because one John F. Letendre was chairman of the Board of Police Commissioners of the City of Woonsocket and was the manager and a stockholder and officer of the Iron Trap Rock Company. Said invalidity is based upon an ordinance of the City of Woonsocket which provides that no officer, member of committee, commissioner, or board appointed by the City Council shall be interested directly or indirectly in any bargain, sale or agreeement other than his own salary or wage, etc., without an express vote of the City Council assenting thereto, and that any contracts in violation of this ordinance are utterly void as to the city.

It is clear, however, according to Public Laws of Rhode Island, 1911, Chapter 661, Sec. 1, that police commissioners are not appointed by the City Council, which includes both the Common Council and the Board of Aldermen, but are appointed by the Mayor with the approval of the Board of Aldermen. Therefore, it is clear that said contract was not void because of the ordinance.

Second, it is alleged that the contract is void for the reason that it is governed by Sec. 1 of Chap. 4 of the Revised Ordinance of 1904, providing for the awarding of the contract to the lowest responsible bidder.

Section 1 of said ordinance provides that all contracts made by an officer, committee, commissioner or board appointed by the City Council shall be subject to a certain specified provision, among others, that no contract shall be made at a higher price than that of the lowest responsible bidder. This contract was made by the Board of Aldermen and it is very doubtful if the Board of Aldermen can be said to be an officer, committee, commissioner or board appointed by the City Council. It may be argued that Chapter 7, Sec. 9, sub-section to that ordinance, provides that the City Council shall by vote request the Board of Aldermen to cause the lay-out and making of a new highway. We should hardly think that this would make the Board of Aldermen a board appointed by the City Council, but however this may be, we shall consider the question as if it were governed by Sec. 1 of Chapter 4 of the Revised Ordinance of 1904 already referred to. The question then is whether the contract was made at a higher price than that of the lowest responsible bidder. The Board of Aldermen in awarding their contract claimed that they did consider the Iron Trap Rock Company as the lowest responsible bidder.

It is claimed that the T. J. Quinn Company was the lowest responsible bidder. There is, to be sure, very good evidence to prove that the rock of the Quinn Company is better rock than the rock of the Iron Trap Rock Company, but the Board of Aldermen and the Mayor both inspected the Quinn quarry and were of the opinion that it contained considerable inferior rock as well as good rock. The City Engineer, Mr. Mills, is admitted to be a man who has held his position for a good many years and to be entirely non-partisan in his attitude, and he testified that, in his opinion, there was very little difference between the two rocks and that for various reasons the Iron Trap Rock would be better than the other. One reason was his experience with deliveries and weight deficiencies in the Quinn quarry rock.

It therefore appears that the Board of Aldermen making the contracts had what they regarded as good reason for preferring the Iron Trap Rock.

It is well settled upon authority that a Board of Aldermen acts in a semi-judicial capacity, and that its discretion in acting is not subject to interference by the court unless it can be clearly shown that they acted in violation of law or that their discretion was fraudulently determined.

A strenuous attempt was made to show that the Board of Aldermen was actuated by fraudulent motives in making the contract.

Every member of the Board, with one exception, was subjected to strenuous cross-examination when called by the complainant as a witness. They were charged by insinuation with having been bribed and actuated by improper motives. We think the complainants have failed to prove their charge of fraud. We can not say that the Board of Aldermen so abused its discretion that this court should declare their actions void. If the citizens of Woonsocket are dissatisfied with the discretion exercised by the Board of Aldermen, it is their privilege to express their will at the next election.

A number of authorities were cited to convince us that, irrespective of the ordinance, the city could not contract with John F. Letendre because he was an officer of the city. All the authorities cited, however, apply only to an officer who has been in the position of making the contract, or assisting to

make the contract, on behalf of the city. The authorities would apply, for instance, to a member of the Board of Aldermen who made this contract. No member of the Board of Aldermen could make a contract or help to make a contract with himself. The police commissioner, however, has had nothing officially to do with the making of the contract on behalf of the city, and does not come within the line of authorities quoted.

Several other considerations were urged which are not, in our opinion, within the allegations of the bill. It is urged, for instance, that the Mayor, who signed the contract, subsequently got some small commission as agent for a surety company which signed the bond of John F. Letendre. There is nothing, however, to show that the Mayor, when he signed the contract, had any knowledge that he might subsequently derive some small commission from the subsequent execution of the bond. It is also clear that the Mayor, as well as the Police Commissioner, does not come within the ordinance. He is certainly not an officer appointed by the City Council.

It is alleged that the contract is invalid because the bid called for a price for 2,000 tons, more or less, and that bidders might not give as low a bid because they had no knowledge of the large amount of rock that would be called for under the contract. It seems to us, however, that this would be to the advantage of the city, because they might limit the amount that they took if, for any reason, they desired to do so, and might insure the purchase of a large lot at the same price, if they des'red. Furthermore, the bidder, if he so desired, might easily have ascertained the probable amount of rock that would be required under the contract.

· Another consideration urged, which is not within the allegations of the bill, is that the ordinances were not followed by having the Council in-

struct the Board of Aldermen to make the contract for trap rock. It may, however, well be, and we presume would. be the fact that the ordinances had been followed by having the Council instruct the Board of Aldermen to lay out and make new highways. If so, we think the power to make contracts for the materials to make such new highways would be implied from the instructions to the Board of Aldermen to make said new highways.

It is also urged that the contract was void because only the surety company signed the bond, and that John F. Letendre did not sign it. It is well settled, however, that such a bond does hold the surety company and, of course, Letendre would be held to his performance of the contract without any bond.

For these reasons we feel that we should not issue a preliminary injunction and seriously embarrass the the spring highway work of the City of Woonsocket. The injunction, therefore, is denied.

For Complainants: Fitzgerald & Higgins.

For Respondents: Ovila Lambert and Murdock & Tillinghast.

---

# SUPERIOR COURT